UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELLERY BENNETT,

        Petitioner,

                                Case No. 17-12412

v.

                                HON. MARK A. GOLDSMITH

CONNIE HORTON,

        Respondent.

_____/

## OPINION & ORDER
## (1) DENYING THE MOTION FOR LEAVE TO FILE AN AMENDED PETITION (Dkt. 9); (2) DISMISSING THE INITIAL PETITION (Dkt. 1) FOR FAILURE TO COMPLY WITH THE STATUTE OF LIMITATIONS; AND (3) DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED IN FORMA PAUPERIS

Petitioner Ellery Bennett, presently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a pro se habeas corpus petition under 28 U.S.C. § 2254. Pet. for Writ of Habeas Corpus (Dkt. 1). Petitioner was convicted of first-degree murder in Oakland County, Michigan, and sentenced to life imprisonment without the possibility of parole. He alleges in a pro se petition filed on July 24, 2017, that (i) his imprisonment was achieved without due process as a result of Michigan's unconstitutional procedure of denying counsel at the initial arraignment, and (ii) the State of Michigan violated his right of access to the courts by refusing to hear his appeal. In a more recent filing, Petitioner seeks to amend his petition to substitute a claim about the denial of a public trial for his second claim, which alleges that he was denied his right of access to the courts. Pet'r's Mot. to File First Amended Habeas Corpus Pet. (Dkt. 9). Respondent Connie Horton, however, argues in an answer to the initial petition that Petitioner has failed to comply with the applicable statute of limitations. Answer in Opp'n to Pet. for Writ of Habeas Corpus at 3, PageID.84 (Dkt. 6). The Court agrees with Respondent that Petitioner's

1

habeas petition is time-barred. Accordingly, the Court will deny the motion to amend the petition and will dismiss the petition as untimely.

## I. BACKGROUND

Following a jury trial in 2011, Petitioner was convicted of first-degree, premeditated murder, Mich. Comp. Laws § 750.316(1)(a). The state appellate court provided the following summary of the evidence leading to Petitioner's conviction:[1]

> Defendant's conviction arises from what was an apparent murder and suicide attempt involving defendant and his wife Lisa. Defendant admittedly killed Lisa, who died from multiple stab wounds. Evidence was presented that defendant left apparent suicide notes and tried to kill himself. When he did not die, he went to Beaumont Hospital for treatment of his wounds.

> The prosecution presented evidence of a motive to kill Lisa, which is probative of premeditation and deliberation. People v. Youngblood, 165 Mich. App. 381, 387; 418 NW2d 472 (1988). The evidence showed that defendant believed that Lisa was seeing other men and that Lisa had threatened to leave defendant and take their daughter with her. Approximately a week before Lisa was killed, she filed a complaint for divorce and requested sole legal and physical custody of their daughter. Financial difficulties limited defendant's ability to hire an attorney to contest the divorce and custody action. The evidence also showed that defendant admittedly wrote several letters allegedly after Lisa was killed.[2] In the letters, defendant admitted that Lisa's conduct and threats to leave him made him "furious" and engendered "hatred for Lisa." Defendant told Detective Gruenwald that "he couldn't live with" such a situation and, in other letters, defendant stated that there was "[n]o way" he would let that happen. In his apparent suicide notes, defendant stated that he hated Lisa for threatening to separate him from his daughter, that he could not let that happen, and that he had let Lisa get the better of him. Defendant also referred to Lisa's death as a "choice" he had made. He further stated that Lisa's interest in other men "caused the final result," thereby supporting an inference that he intentionally killed Lisa because of her infidelity.

> Most indicative of defendant's intent is a letter defendant wrote to a business associate. In that letter, defendant stated that his associate was one of two people that defendant "couldn't stand." Defendant admitted that the second person he was referring to in the letter was Lisa. In the letter, defendant told the associate, "You

---

[1] The state court's summary is included in its analysis of Petitioner's claim that there was insufficient evidence to support his conviction for premeditated murder.

[2] Defendant testified that he wrote the letters after the stabbing. However, defendant discarded the computer on which he wrote the letters, and this computer was never recovered.

avoided meeting me, which saved your life. . . . I was able to get one, my goal was to get both of you," thus indicating that defendant had set a goal of killing Lisa and intended to kill his associate as well. Evidence was presented that defendant had attempted to meet with the associate on the evening before Lisa's death, but was not successful. Detective Gruenwald testified that defendant stated that he had intended to kill the associate that evening if they had met.

Defendant also made conflicting statements, which are evidence of consciousness of guilt. People v. Cowell, 44 Mich. App 623, 625; 205 NW2d 600 (1973). Defendant initially told the police that he struck Lisa while they were both standing by the bed and she fell onto the bed. After an evidence technician testified that such a scenario was unlikely, defendant changed his story to coincide with the physical evidence and testified that he and Lisa were both on the bed when he stabbed her. Defendant admittedly tried to commit suicide by cutting himself after he stabbed Lisa, which is further evidence of consciousness of guilt. United States v. Cody, 498 F3d 582, 591–592 (CA 6, 2007). The evidence showed that defendant had cuts to his neck, chest, and wrist, and that defendant told some hospital personnel and a police officer that his injuries were self-inflicted. However, he also used the cuts to his chest to create an issue of self-defense by claiming that Lisa had stabbed him in the chest. Moreover, he testified that she stabbed him so hard that he could feel the knife blade "hit the bone," but a treating physician described the chest wounds as "superficial." Evidence that defendant attempted to create a false defense, like other false exculpatory statements, also supported an inference of consciousness of guilt. People v. Dandron, 70 Mich. App 439, 442–443; 245 NW2d 782 (1976).

People v. Bennett, No. 303025, 2012 WL 4373399, at *1-2 (Mich. Ct. App. Sept. 25, 2012) (footnote in original as footnote one).

On February 11, 2011, an Oakland County Circuit Court jury found Petitioner guilty, as charged, of first-degree, premeditated murder. 2/11/2011 Trial Tr. at 93-95, PageID.513 (Dkt. 7-7). On March 9, 2011, the state trial court sentenced Petitioner to mandatory life imprisonment without the possibility of parole. 3/9/2011 Sentencing Tr. at 29, PageID.543 (Dkt. 7-8).

Petitioner appealed his conviction on grounds that (i) the prosecutor's comments during opening statements and closing arguments constituted misconduct requiring reversal of his conviction, (ii) the trial court deprived him of due process and a fair trial by admitting hearsay, (iii) the evidence at trial was insufficient, and the jury's verdict was against the great weight of the evidence, and (iv) the trial court violated his right to a public trial by excluding his family from

the courtroom during voir dire.  The Michigan Court of Appeals rejected Petitioner's claims and affirmed his conviction.  See Bennett, 2012 WL 4373399.  Petitioner raised the same claims in the Michigan Supreme Court, which denied leave to appeal on April 1, 2013.  See People v. Bennett, 828 N.W.2d 40 (Mich. 2013).

On February 25, 2016, Petitioner signed and dated his first habeas corpus petition, and on March 3, 2016, the Clerk of this Court filed the petition.  Petitioner's sole ground for relief was that his imprisonment was the result of Michigan's unconstitutional procedure of denying him counsel at his arraignment in state court on August 20, 2010.

United States District Judge John Corbett O'Meara – to whom the case involving the first habeas petition was assigned before his full retirement from the bench – dismissed the petition without prejudice because Petitioner had failed to exhaust state remedies for his claim.  Judge O'Meara declined to stay the case while Petitioner exhausted state remedies, in part, because the petition appeared to be barred by the one-year statute of limitations applicable to federal habeas actions.  See Bennett v. Woods, No. 16-10784, Op. and Order Dismissing the Pet. for Writ of Habeas Corpus (E.D. Mich. Mar. 14, 2016).  Petitioner moved for reconsideration, but Judge O'Meara denied the motion after concluding that he had properly dismissed the petition on exhaustion grounds.  See id., Order Denying Pet'r's Mot. for Reconsideration, dated April 1, 2016.

On April 18, 2016, Petitioner filed a motion to vacate the trial court's judgment on the ground that he was denied his right to counsel at his arraignment.  The trial court denied the motion because Petitioner had failed to provide the trial court with proper authority for his claim.  See People v. Ellery, No. 2010-233589-FC (Oakland Cty. Cir. Ct. May 12, 2016).

Petitioner filed a similar motion to vacate the trial court's judgment on June 30, 2016.  The trial court treated the motion as a motion for reconsideration and then denied the motion because Petitioner had failed to establish a palpable error in the court's prior order and because, once again, Petitioner had not provided the court with proper authority to support his argument.  See People v.

Bennett, No. 2010-233589-FC (Oakland Cty. Cir. Ct. June 29, 2016). Petitioner appealed the trial court's decision to the Michigan Court of Appeals, which denied leave to appeal without an explanation. See People v. Bennett, No. 334181 (Mich. Ct. App. Jan. 25, 2017).

Petitioner raised the same claim, along with a new claim about the alleged denial of his right of access to the courts, in the Michigan Supreme Court. On June 27, 2017, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. See People v. Bennett, 896 N.W.2d 431 (Mich. 2017).

On July 19, 2017, Petitioner signed and dated his current habeas corpus petition, which the Clerk of the Court filed on July 24, 2017. Petitioner alleges as grounds for relief that (i) his conviction is void because he was arraigned without the assistance of counsel, and (ii) the state courts violated his constitutional right of access to the courts by refusing to hear his post-conviction motion and subsequent appeals.

Respondent filed an answer to the petition in which she argues that Petitioner failed to comply with the statute of limitations, that Petitioner procedurally defaulted his claims, and that his claims lack substantive merit. Resp't's Answer in Opp'n to Pet. for Writ of Habeas Corpus at i, 3, 63, PageID.81, 84, 144. Petitioner replied that his first claim is not procedurally defaulted, that his petition is timely, and that he is entitled to equitable tolling if the Court concludes that his claims are time-barred. He also admits in his reply to Respondent's answer that his second claim was not exhausted in state court. Pet'r's Reply to Resp't's Answer to Pet. for Writ of Habeas Corpus (Dkt. 11). Finally, Petitioner has moved for permission to file an amended petition in which he substitutes a claim about the denial of his right to a public trial for his unexhausted second claim about the alleged denial of his right of access to the courts. Pet'r's Mot. for Leave to File First Amended Habeas Corpus Pet.

## II. ANALYSIS

### A. The Statute of Limitations

5

Petitioner "filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), so it is subject to AEDPA's stringent standards." Davis v. Bradshaw, __ F.3d __, __, No. 17-3262, 2018 WL 3913103, at *6 (6th Cir. Aug. 16, 2018) (citing Smith v. Mitchell, 567 F.3d 246, 255 (6th Cir. 2009)). AEDPA established a one-year period of limitations for state prisoners to file their federal habeas corpus petitions. See 28 U.S.C. § 2244(d)(1); see also Wall v. Kholi, 562 U.S. 545, 550 (2011); Davis, 2018 WL 3913103 at *6; Holbrook v. Curtin, 833 F.3d 612, 615 (6th Cir. 2016), cert. denied sub nom Woods v. Holbrook, 137 S. Ct. 1436 (2017). The limitations period runs from the latest of the following four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). "AEDPA also contains a tolling provision, which specifies that '[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.'" Holbrook, 833 F.3d at 615 (quoting 28 U.S.C. § 2244(d)(2)).

In his reply brief, Petitioner argues in favor of a delayed start to the limitations period under § 2244(d)(1)(B) (state-created impediment). According to Petitioner, the state prevented him from learning about the statute of limitations by not making the law available to him. In addition, Petitioner claims that another inmate incorrectly told him there was no deadline for filing a habeas petition. Petitioner asserts that he first learned of the statute of limitations when Judge O'Meara

mentioned it in his order dismissing Petitioner's first habeas petition. Pet'r's Reply to Resp't's Answer to Pet. for Writ of Habeas Corpus at i, 1-5, PageID.1042, 1045-1049.

The Court finds no merit in Petitioner's argument because the inmate who incorrectly advised Petitioner about the statute of limitations was not a state actor. See Lewis v. McClennan, 7 F. App'x 373, 375 (6th Cir. 2001) (concluding in a civil rights case that unnamed jail inmates were not operating as state actors when they attacked the plaintiff); Goodell v. Anthony, 157 F. Supp.2d 796, 801 (E.D. Mich. 2001) (collecting cases that have held "an inmate is not a state actor or a person acting under color of state law for purposes of stating a claim under § 1983"). Furthermore, limiting an inmate's access to a prison law library does not constitute a state-created impediment to filing a timely habeas petition. Maclin v. Robinson, 74 F. App'x 587, 589 (6th Cir. 2003). Thus, "there exists no basis for a § 2244(d)(1)(B) claim." Id.

The relevant subsection here is § 2244(d)(1)(A), which states that a conviction becomes final at "the conclusion of direct review or the expiration of the time for seeking such review."

> For petitioners who pursue direct review all the way to [the Supreme] Court, the judgment becomes final at the "conclusion of direct review"—when [the Supreme] Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in [the Supreme] Court, or in state court, expires.

Gonzalez v. Thaler, 565 U.S. 134, 150 (2012). A petition for writ of certiorari to review a judgment entered by a state court of last resort must be filed in the United States Supreme Court within ninety days after entry of the judgment. Sup. Ct. R. 13.1.

Petitioner did not apply for a writ of certiorari in the United States Supreme Court following his direct appeal. Therefore, his conviction became final on Monday, June 30, 2013, ninety days after the Michigan Supreme Court's decision dated April 1, 2013. The statute of limitations began to run on the following day, Fed. R. Civ. P. 6(a)(1); Bronaugh v. Ohio, 235 F.3d 280, 285 (6th Cir. 2000), and it ran uninterrupted for one year, that is, until June 30, 2014.

Petitioner did not file his first post-conviction motion in state court until April 18, 2016. By then the limitations period had expired. The filing of his post-conviction motions and the tolling provision of § 2244(d)(2) did not revive the limitations period or restart the limitations clock at zero. Vroman v. Brigano, 346 F.3d 598, 602 (6th Cir. 2003) (quoting Rashid v. Khulmann, 991 F. Supp. 254, 259 (S.D. N.Y. 1998)).

The filing of Petitioner's first habeas petition also did not affect the limitations period because it, too, was filed after Petitioner's conviction became final. In addition,

> [t]he Supreme Court's decision in Duncan v. Walker, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), makes clear that the federal habeas statutes do not toll the statute of limitations while the federal habeas petition is pending. Section 2244(d)(2) provides for the statute of limitations to be tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2). In Duncan, the Supreme Court held that this provides for tolling only during the pendency of state proceedings, not federal proceedings. Duncan, 533 U.S. at 180, 121 S.Ct. 2120.

Griffin v. Rogers, 308 F.3d 647, 651 (6th Cir. 2002). The Court concludes that the initial habeas petition in this case and the proposed amended petition are time-barred.

**B. Equitable Tolling**

AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). But a habeas petitioner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

Petitioner waited more than a year and half after the statute of limitations expired to take any action in state or federal court. He, nevertheless, asserts that he is entitled to equitable tolling of the limitations period because, at the time, his only means of accessing legal materials was to request a specific book or item from an inmate clerk, and he did not know which materials to request. Petitioner also asserts that the inmate clerk whom he consulted told him there was no

deadline for his habeas petition. Pet'r's Reply to Resp't Answer to Pet. for Writ of Habeas Corpus at 6-9, PageID.1050-1053.

Petitioner could have made a specific request for a copy of the federal habeas statutes. Furthermore, "to qualify as 'extraordinary circumstances,' the petitioner must show more than just his status as pro se or his limited access to a law library." Jones v. United States, 689 F.3d 621, 627 (6th Cir. 2012) (citing Hall v. Warden, Lebanon Corr. Inst., 662 F.3d 745, 751 (6th Cir. 2011)). The Sixth Circuit

> has held that combinations of illiteracy, pro se status, lack of access to legal materials, ignorance of the law, and reliance on legal assistance from others do not amount to extraordinary circumstances. See, e.g., Keeling v. Warden, Lebanon Corr. Inst., 673 F.3d 452, 464 (6th Cir. 2012) ("[W]e note that Keeling's pro se status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance."); Hall v. Warden, Lebanon Corr. Inst., 662 F.3d 745, 750–52 (6th Cir. 2011) (stating that a combination of a prisoner's pro se status, limited law-library access, and inability to access trial transcripts did not amount to an extraordinary circumstance); Cobas v. Burgess, 306 F.3d 441, 444 (6th Cir. 2002) (finding that a petitioner is not entitled to equitable tolling on the basis of his ignorance of the law and legal process, his lack of education, his functional illiteracy, or his reliance on prison paralegals).

Tanner v. Yukins, 776 F.3d 434, 446 (6th Cir. 2015) (Smith Gibbons, C.J., dissenting); see also Andrews v. United States, No. 17-1693, 2017 WL 6376401 at *2 (6th Cir. Dec. 12, 2017) (noting that "general allegations of placement in segregation and lack of access to legal materials are not exceptional circumstances warranting equitable tolling"), certificate of appealability denied, 2017 WL 6376401 (6th Cir. Dec. 12, 2017).

The Court concludes that Petitioner was not diligent in pursuing his rights and that no extraordinary circumstance prevented him from filing a timely habeas petition. Thus, there is no basis for equitably tolling the limitations period.

### C. Actual Innocence

Actual innocence, if proved, serves as a gateway through which habeas petitioners may pass when the impediment to consideration of the merits of their constitutional claims is expiration

of the statute of limitations.  <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 386 (2013).  The Supreme Court

has cautioned, however, "that tenable actual-innocence gateway pleas are rare:  '[A] petitioner

does not meet the threshold requirement unless he persuades the district court that, in light of . . .

new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a

reasonable doubt.' "  <u>Id</u>. (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1995)).

Evidence of Petitioner's guilt was substantial, <u>see</u> <u>supra</u>, Section I, and he is not claiming

to be actually innocent of the crime for which he was convicted.  Therefore, AEDPA's time

limitations apply here.  <u>See</u> <u>McQuiggin</u>, 569 U.S. at 394 ("AEDPA's time limitations apply to the

typical case in which no allegation of actual innocence is made.").

### D. Certificate of Appealability and Proceeding <u>In</u> <u>Forma</u> <u>Pauperis</u> on Appeal

Petitioner may not appeal the Court's denial of his habeas petition unless a district or circuit

judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P.

22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial

showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327

(2003) (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  When, as in this case, "the district

court denies a habeas petition on procedural grounds without reaching the prisoner's underlying

constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason

would find it debatable whether the petition states a valid claim of the denial of a constitutional

right and that jurists of reason would find it debatable whether the district court was correct in its

procedural ruling."  <u>Slack</u>, 529 U.S. at 484.

Because Petitioner's habeas petition is clearly time-barred, reasonable jurists could not find

the Court's procedural ruling incorrect.  Accordingly, the Court will deny a certificate of

appealability.  The Court also will deny Petitioner leave to proceed <u>in forma pauperis</u> on appeal because an appeal could not be taken in good faith.  28 U.S.C. § 1915(a)(3).

### III. CONCLUSION

For the reasons given above, the petition for writ of habeas corpus (Dkt. 1) is dismissed for failure to comply with the statute of limitations, and the motion to file an amended petition (Dkt. 9) is denied.  The Court also declines to issue a certificate of appealability and denies leave to appeal <u>in forma pauperis</u>.

SO ORDERED.

Dated:  September 24, 2018                    s/Mark A. Goldsmith
      Detroit, Michigan                         MARK A. GOLDSMITH
                                      United States District Judge

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 24, 2018.

                                s/Karri Sandusky
                                Case Manager